[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 12, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-10416

_____

D. C. Docket No. 04-01283-CV-BBM-1

STEPHEN G. LEVINE,

Plaintiff-Appellant,

versus

WORLD FINANCIAL NETWORK NATIONAL BANK, et al.,

Defendants,

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 12, 2009)

Before BIRCH and PRYOR, Circuit Judges, and STROM,* District Judge.

_____

*Honorable Lyle E. Strom, United States District Judge for the District of Nebraska,
sitting by designation.

PRYOR, Circuit Judge:

This appeal presents the issue whether a consumer reporting agency willfully violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq, when the agency sold a consumer report to a creditor for "account review" after the consumer had closed his account with that creditor. Experian Information Systems, Inc., sold Stephen G. Levine's consumer report to a credit card issuer, Alliance Data Systems, for what Alliance represented to be a semiannual account review of "current customers." In fact, Levine had closed his account and was not a current customer of Alliance. Levine filed a complaint against Experian that the Fair Credit Reporting Act did not permit the sale of reports for consumers with closed accounts and that Experian willfully had violated the Act. The district court granted summary judgment in favor of Experian on the ground that a reasonable interpretation of the Act permits the sale of reports for consumers with closed accounts. We affirm.

## I. BACKGROUND

Sometime before 1998, Stephen G. Levine held a credit card with a men's clothing retailer, Structure. The credit card was issued by World Financial Network National Bank, a subsidiary of a credit card company, Alliance Data Systems, Inc. In 1998, Levine paid his balance in full and closed his credit

2

account. Levine's consumer report reflected this payment and closure. In 2001, Alliance initiated a semiannual account review program and began purchasing consumer reports from Experian twice a year. Experian was informed that Alliance used the scores to determine what services it might market to individual customers and that all requests were for current customers of Alliance. In January and July 2002, Experian sold Levine's consumer report to Alliance.

In May 2004, Levine sued Experian, World Financial Network National Bank, Alliance, and Structure. Levine alleged that, because his account was closed, there was not an account for Alliance to review, and Alliance must have sought the report for a purpose other than those permitted by the Fair Credit Reporting Act. Levine alleged that Experian failed to maintain reasonable procedures to ensure that it furnished reports only for permissible purposes. Levine alleged that both the sales of his report for an impermissible purpose and the failure to maintain reasonable safeguards against those sales were willful violations of the Act, 15 U.S.C. § 1681n.

Experian, the bank, and Structure moved to dismiss Levine's complaint for failure to state a claim, and the district court granted their motions. Levine appealed. While his appeal was pending, Levine settled his claims against the bank and Structure. See Levine v. World Fin. Network Nat'l Bank, 437 F.3d 1118,

3

1120 (11th Cir. 2006).

We reversed and remanded because the pleadings did not resolve whether Experian had reasonable grounds to believe that the consumer report would be used for an impermissible purpose and whether Experian made reasonable efforts to verify the validity of the request for the report. Id. at 1122. We acknowledged, "There is a difference in opinion on whether the ambiguous language in [the Act] contains an absolute prohibition against the sale of credit reports to former creditors whose accounts are closed and paid in full." Id. The difference of opinion is reflected by a decision of a sister circuit and an advisory letter from the Federal Trade Commission. Id. Compare Wilting v. Progressive County Mut. Ins. Co., 227 F.3d 474, 476 (5th Cir. 2000) (per curiam) ("[N]either [the Act] nor the FTC's commentary on [the Act] suggests that a report may only be permissibly obtained during particular points in the parties' relationship."), with Letter from Clarke W. Brinckerhoff, Federal Trade Commission, to Kenneth J. Benner, American Council on Consumer Awareness (Aug. 30, 1999) ("Once an account is closed because the consumer has paid the debt in full . . . it is our view that no permissible purpose exists for a [consumer reporting agency] to provide file information . . . to the creditor. Because there no longer exists any account to 'review' and the consumer is not applying for credit, the [Act] provides no

4

permissible purpose for the creditor to receive a consumer report from [the agency].").  We "reserved judgment" on the ambiguity because we did not need to decide it to resolve the appeal.  Levine, 437 F.3d at 1122.  On remand, Levine amended his complaint to add a claim for negligent violation of the Act, 15 U.S.C. § 1681o.

After discovery, Experian moved for summary judgment.  Experian argued that Levine could not prove a willful violation because the Act was unclear about sales of reports for consumers with closed accounts, and an interpretation that the sales were permitted was reasonable.  Experian relied on the intervening decision in Safeco Insurance Company of America v. Burr, 127 S. Ct. 2201, 2208–09, 2215–16 (2007), to support its argument that a company does not willfully violate the Act by interpreting it erroneously so long as its interpretation is not "objectively unreasonable."  Experian argued that the Act did not clearly prohibit the sale of a consumer report for a closed account, and Experian cited our acknowledgment that the Act provided "ambiguous" guidance on the issue.  Experian also argued that it was entitled to summary judgment because Experian obtained an express certification from Alliance that the consumer reports would be used only for permissible purposes.  Experian argued that Levine could not prove a negligent violation of the Act in the absence of proof of actual damages.

5

Levine responded that his account was closed when Experian sold his consumer report and that sale violated the Act.  Levine also argued that Experian must have known that Alliance planned to use the reports for an impermissible purpose.  Levine abandoned his claim for a negligent violation of the Act.

The district court granted summary judgment in favor of Experian.  The district court ruled that, under Safeco, the "release of a customer credit report to the holder of a closed account was . . . [permissible based on] an objectively reasonable interpretation of the statute."  The district court also concluded that Levine had failed to prove that Experian did not maintain reasonable procedures to ensure that the consumer reports it sold were used for permissible purposes.

## II.  STANDARD OF REVIEW

We review de novo a summary judgment, and we affirm the judgment only if we conclude that there is no genuine issue of material fact.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970).

## III.  DISCUSSION

The Fair Credit Reporting Act provides that consumer reporting agencies may furnish consumer reports for limited purposes, 15 U.S.C. § 1681b, and those agencies must maintain reasonable procedures to ensure compliance with the Act, id. § 1681e.  The Act provides civil liability for both willful violations, id. § 1681n,

6

and negligent violations, id. § 1681o. The decision of the Supreme Court in Safeco, 127 S. Ct. 2201, governs our understanding of a willful violation of the Act.

To prove a willful violation, a consumer must prove that a consumer reporting agency either knowingly or recklessly violated the requirements of the Act. Safeco, 127 S. Ct. at 2208. To prove a reckless violation, a consumer must establish that the action of the agency "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 2215. An interpretation that favors the agency must be "objectively unreasonable" under either the text of the Act or "guidance from the courts of appeals or the Federal Trade Commission that might have warned [the agency] away from the view it took." Id. at 2215, 2216.

Levine argues that he presented evidence that Experian committed two willful violations of the Act. First, Levine argues that Experian adopted an objectively unreasonable reading that the Act permitted the sale of reports for consumers with closed accounts. Second, Levine argues that Experian failed to maintain reasonable procedures to ensure that the reports it sold were used for permissible purposes. We discuss each argument in turn.

7

*A. It Is Not Objectively Unreasonable To Interpret the Act To Permit the Sale of a Consumer Report to a Creditor After the Consumer Has Closed His Account with that Creditor.*

Levine argues that the sale of his reports did not satisfy either provision that permits sales of reports for "account review" because his account was closed. The first provision, 15 U.S.C. § 1681b(a)(3)(F)(ii), allows a creditor to examine a consumer report to ensure that a consumer "continues to meet the terms of the account," and the second provision, id. § 1681b(a)(3)(A), allows the sale of a consumer report when the seller "has reason to believe [that the buyer] intends to use the information in connection with a credit transaction involving the consumer . . . and involving the . . . review or collection of an account." Levine argues that neither of these provisions could apply to closed accounts. Levine argues that Experian actually knew that the Act did not permit sales of reports for consumers whose accounts were closed because language in letters from Experian to Alliance restricted the sales to "current customers." Levine argues that the ruling of the district court "cannot be reconciled with the . . . purpose [of the Act] of restricting access to consumers' confidential financial information." These arguments fail.

The text of the Act is far from "pellucid," Safeco, 127 S. Ct. 2216, that reports may not be sold for consumers whose accounts are closed. Neither of the provisions upon which Levine relies expressly distinguish between closed and

8

open accounts, see 15 U.S.C. § 1681b(a)(3)(A), (F), and we cannot say that the term "account" necessarily means "an open account." Nor have judicial opinions established that the Act forbids the sale of reports for consumers whose accounts are closed. As we recognized in Levine's first appeal, "[t]here is a difference in opinion on whether the ambiguous language in [the Act] contains an absolute prohibition against the sale of credit reports to former creditors whose accounts are closed and paid in full." Levine, 437 F.3d at 1122. Although Levine offers two staff opinion letters from the Federal Trade Commission as evidence of a regulatory instruction that reports on closed accounts may not be sold, the Supreme Court has expressly declined to describe such letters as "authoritative guidance." Safeco, 127 S. Ct. at 2216 & n.19.

Levine argues that Experian recklessly violated the Act because its records prove that Experian read the Act to prohibit the sale of reports on consumers whose accounts were closed, but this argument fails. Safeco makes clear that evidence of subjective bad faith cannot support "a willfulness finding . . . when the company's reading of the statute is objectively reasonable." Id. at 2216 & n.20. The interpretation of the Act that agencies may sell reports for closed accounts was objectively reasonable, and Safeco instructs us not to consider the subjective intent of Experian.

Levine also argues that interpreting the Act to allow sales of reports for closed accounts "cannot be reconciled with the . . . purpose [of the Act] of restricting access to consumers' confidential financial information," but under Safeco there is no underlying purpose criterion to determine whether an interpretation of the Act is objectively reasonable. What matters under Safeco is the text of the Act and authoritative interpretations of that text. Id. at 2215–16. A consumer reporting agency does not recklessly violate the Act when it acts in accord with an objectively reasonable interpretation of the Act.

*B. Experian Did Not Willfully Violate the Act by Failing To Maintain Reasonable Compliance Procedures.*

Levine also argues that Experian violated the Act by failing to maintain reasonable procedures to ensure that the consumer reports it provided were used only for permissible purposes, but we need not evaluate the procedures Experian maintained. Because it was not objectively unreasonable to read the Act as allowing the sale of a report for a closed account, no investigation or procedure would have alerted Experian to the possibility of an impermissible use. Any dearth of reasonable compliance procedures cannot give rise to a willful violation of the Act.

**IV.  CONCLUSION**

10

The summary judgment in favor of Experian is **AFFIRMED.**